[Civ. No. 49916. Second Dist., Div. Four. Oct. 6, 1977.]

ROY LIEBMAN, Plaintiff and Appellant, v.
CALIFORNIA STATE UNIVERSITY AND COLLEGES et al.,
Defendants and Respondents.

**COUNSEL**

Loren E. McMaster, Michael D. Stump, James L. Jackson and Allen R. Link for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, and Richard M. Radosh, Deputy Attorney General, for Defendants and Respondents.

**OPINION**

**KINGSLEY, Acting P. J.**—Petitioner is presently employed, as librarian III, at California State University, Los Angeles. He was recommended by his superior for reclassification to librarian IV. That recommendation was denied by a properly delegated person in the office of the chancellor

of the university. Petitioner then sought to file a grievance under the provisions of executive order No. 201, issued by the chancellor under the authority of section 24201 of the Education Code. His attempt to utilize the grievance procedure therein outlined was rejected on the ground that that procedure did not apply to actions taken by, or under the delegated authority of, the chancellor, but only to actions taken by the president of a local campus. He sought a writ of mandate to compel the university to afford him the hearing provided for under the grievance procedure. The writ was denied; he has appealed; we affirm.

On the record before us, we affirm the judgment denying the writ but on a ground other than that relied on by the respondents. Section 1.6 of the executive order provides as follows:

"The purpose of these Procedures is to provide an equitable means of correcting actions taken by The California State University and Colleges which directly aggrieve academic employees. It is intended that a grievance proceeding be initiated only in the gravest situations involving serious injustice to an academic employee.

"When a grievance hearing is initiated, it thus may be assumed that a major problem is manifest. For this reason, the Grievance Procedures are deliberately precise. Attempts to resolve the areas of discontent by informal discussion shall precede, continue through, and preferably be a reason for terminating a grievance proceeding."

Section 3.3 of that order provides: "Only final decisions are subject to review by a grievance proceeding; grievance proceedings may not be brought to review recommendations of faculty committees or of administrators. A final decision may be the subject of only one grievance proceeding by any grievant. The President or his designee shall determine whether a particular decision complained of is a final decision, and whether it was the subject of a previous grievance proceeding commenced by the same grievant. A grievance proceeding may not be brought to review such determinations of the President or his designee."

The record before us shows that petitioner was given the opportunity to appeal the original decision, which was by the principal personnel analyst, to the vice-chancellor for faculty and staff affairs, but that he rejected that offer, claiming a right to proceed directly to grievance hearings. The provisions above quoted make it clear that the

grievance procedure may not be utilized unless and until more informal methods of resolving a dispute have been attempted and failed. Nothing in the record shows that petitioner would not have received full satisfaction if he had resorted to the offered appeal to the vice-chancellor. It follows that, even assuming (which we do not decide) that the grievance procedure might ultimately have been available to petitioner, his refusal to follow the prescribed preliminary step bars him from the relief he now seeks.

The judgment is affirmed.

Dunn, J., concurred.

**JEFFERSON (Bernard), J.**—I concur in the result reached by the majority but I disagree with the reasoning by which the majority reaches its result.

The majority determines that the trial court was correct in denying the writ of mandate to appellant herein but affirms the judgment of denial on a ground other than that relied upon by the trial court. The issue involved is whether appellant had a right to file a grievance because he was denied reclassification from librarian III to librarian IV. Appellant sought to file a grievance under the provisions of executive order No. 201, issued by the Chancellor of the California State University and College System.

The majority does not determine the question of the applicability to appellant of the grievance procedure set forth in executive order No. 201. The majority reaches this result by reliance upon sections 1.6 and 3.3 of executive order No. 201. The majority states that these two sections require the utilization of all informal methods of resolving a dispute before resort to the grievance procedure, and that appellant had not utilized or exhausted the informal methods to obtain the relief he desired.

I do not see the logic in the majority's position that sections 1.6 and 3.3 of executive order No. 201 require the exhaustion by appellant of the informal methods of resolving a dispute, without necessarily holding that the order is applicable to his claim that he was unjustifiably denied the right to job reclassification. If sections 1.6 and 3.3 are applicable to appellant, then all other sections of executive order No. 201 were equally applicable to his claim. I cannot agree with the majority's necessary

holding that some sections of the order are applicable to bar appellant's claim but with no decision on whether the order as a whole is applicable to appellant.

I agree with the trial court and respondents that the grievance procedures set forth in executive order No. 201 are not applicable to appellant and, hence, the question of whether he complied with the requirements of executive order No. 201 is not in issue. The view of the trial court and respondents is that the question of job reclassification raised by appellant involved a decision that was required to be made by the office of the Chancellor of the California State University and College System, whereas executive order No. 201 applied only to "campus decisions" which culminated in the office of the president of the particular college where an aggrieved academic employee was employed.

A consideration of various sections of executive order No. 201 indicates that the order was intended to cover "campus decisions" only. Section 3.1 provides that "[a] grievance complains of a campus decision or action." Section 2.1 provides that "[a]ll determinations and findings under these Procedures made at the campus level by anyone other than the President are in the nature of recommendations to the President, who shall have final authority at the campus level." Section 2.2 provides for the designation by the president of a particular college or campus to delegate his functions to designees who are employees of the campus. Section 2.2 specifically states: "All references in these Procedures to the 'President' mean the President of the campus at which the grievant is employed and include such designees."

The provisions of section 3.3 are set forth in the majority opinion. It is to be noted that section 3.3 states that "[t]he President or his designee shall determine whether a particular decision complained of is a final decision" to be reviewed by the grievance procedures of executive order No. 201. Section 14.4 provides that "[t]he decisions of the President in each case are final *at the campus level.*" (Italics added.)

It seems clear that executive order No. 201, issued by the chancellor, resulted from the rule-making power of the Trustees of the California State University and Colleges System, who delegated such authority to the chancellor of the system. Section 24201 of the Education Code states that "the trustees shall provide by rule for the government of their appointees and employees, . . . including, but not limited to, appointment, *classification,* terms, duties, . . ." (Italics added.)

In effect, the majority concedes that appellant's job classification was a function of the office of the vice-chancellor for faculty and staff affairs. This office is a state-wide office operating under the chancellor of the system. Since the matter of job classification was retained by the chancellor and was not made a part of the "campus decisions" to be governed by the grievance procedures under executive order No. 201, there is no logical or reasonable way to interpret the order as covering appellant's job classification. The President of California State University at Los Angeles has no power to consider the correctness of a decision of the vice-chancellor for faculty and staff affairs of the chancellor's office regarding the reclassification of appellant as a librarian in order to put into effect the grievance procedures set forth in executive order No. 201.

As indicated by section 2.1 of the order, the determinations and findings under the procedures of the order, made at the campus level by anyone other than the president, are in the nature of recommendations to the president, who has final authority at the campus level. The recommendation for appellant's reclassification from librarian III to librarian IV, made by the librarian of California State University, Los Angeles, was forwarded to the chancellor's office for action. The action denying or approving this recommendation had to be made by the vice-chancellor for faculty and staff affairs, to whom the matter of reclassification of academic personnel was delegated by the chancellor. Since this was not a campus decision to be ultimately submitted to the President of California State University, Los Angeles, the grievance procedures set forth in executive order No. 201 did not apply.

Respondents argue that this conclusion is fortified by the Legislature's enactment in 1975 of Education Code section 24315. This section starts with the provision: "The Trustees of the California State University and Colleges shall establish grievance and disciplinary action procedures for all academic employees, . . ." Subdivision (a) of section 24315 provides for grievances and disciplinary actions to be heard by a faculty hearing committee which, in turn, shall make a recommendation to the president of the state university or college. Subdivision (d) of section 24315 provides that "[i]f there is disagreement between the faculty hearing committee's decision and the university or college president's decision, the matter shall go before an arbitrator whose decision shall be final."

Respondents urge that section 24315 supports the interpretation of executive order No. 201, limiting its applicability to "campus decisions,"

since section 24315, subdivision (d), is concerned with decisions of a campus president. Respondents assert that section 24315 evinces an intent by the Legislature that grievance matters concerning decisions that fall within the decision-making authority of a president of a particular state university or college should not extend to decisions falling within the decision-making authority of the Trustees of the California State University and College System or the chancellor of the system.

It is clear that Education Code section 24315 does not apply to appellant's reclassification matter, since section 24315 was enacted after appellant's grievance arose. However, it is not too clear that section 24315 can be used to fortify respondents' suggested interpretation of executive order No. 201. Education Code section 24315 also provides that "[f]or purposes of this section, a 'grievance' is an allegation by an employee that he was directly wronged in connection with the rights accruing to his *job classification*, benefits, working conditions, appointment, reappointment, tenure, promotion, reassignment, or the like." (Italics added.)

I interpret Education Code section 24315 as requiring the trustees to establish grievance procedures for all academic employees involving, inter alia, "job classification." These procedures must involve a faculty hearing committee which would make recommendations to the president of the particular state university or college. I see no basis for interpreting section 24315 to permit the chancellor of the state-wide system to make decisions for any "academic employee" relating to "job classification," and thus avoid submission of such decisions to the grievance procedures required by section 24315 and involving a faculty hearing committee, the president of the particular state university or college, and arbitration as the final procedure.

However, without consideration of Education Code section 24315, I reach the result that the trial court's judgment denying to appellant a writ of mandate was correctly decided and on the proper ground that executive order No. 201 was simply not applicable to the grievance of appellant.